250 So.2d 359

**STATE of Louisiana**

v.

**Clarence T. ANDREWS.**

**No. 50990.**

June 28, 1971.

Lacour & Wilson, Vanue B. Lacour, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Walter L. Smith, Jr., Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice:

Defendant appeals from his conviction of automobile theft and his sentence to serve three years in the Louisiana State Penitentiary, said sentence to run concurrently with sentence accused is now serving and with credit for time served in custody since arrest.

The facts of record are to the effect that at 6:00 o'clock on the morning of August 14, 1969, Sue Duffy (Mrs. John E. Duffy) visited the defendant at his apartment in Baton Rouge, Louisiana. After conversing with the defendant, she fell asleep and awakened at 1:00 o'clock in the afternoon. Defendant had departed and, according to Mrs. Duffy's testimony, had left her only a pair of shoes. Upon discovering that her car, a 1968 Javelin, was missing from in front of defendant's apartment, Mrs. Duffy notified local authorities and filed a complaint of theft against the defendant. The information was placed in the NCIC file—"a stop on the automobile and the subject"—and defendant was arrested approximately six weeks later in Lamar, Colorado, with Mrs. Duffy's car in his possession. Mrs. Duffy's husband collected insurance for the theft of his wife's car, and the insurer thereafter sold for its salvage value the repossessed car, which had been wrecked. Having waived extradition, defendant was returned to Baton Rouge on October 7, 1969. A bill of information was filed against him, and trial was held on March 23, 1970; he was found guilty as charged.

Defendant waived jury trial and testified in his own behalf. His testimony with respect to his arrest in Colorado is as follows:

"Q. And who arrested you?

"A. The sheriff * * *

"Q. The sheriff deputy?

"A. * * * of Lamar County, Lamar, Colorado.

"Q. Officer, some state officer. The sheriff of that county arrested you?

"A. Yes.

"Q. Then after your arrest there what investigation that you know about, if any, took place?

"A. I was arrested under, to, in, is it NCIS or something like that deal on the strength of F.B.I. warrant.

"Q. Did the F.B.I., did any F.B.I. officers question you or visit you at all while you were under arrest in Lamar, Colorado?

"A. They did.

"Q. And how many times, if more than once, did they or did any officer of the

Federal Bureau of Investigation have contact with you?

"A. An Agent Trainer, Denver Office of the F.B.I., came and questioned me either the first or the second day that I was there and told me that I would be prosecuted under the Dyer Act. Now, * * *

"Q. Well, were you, have charges been filed against you under the Dyer Act?

"A. No, he said * * *

"Q. Do you have any reason, do you know why not if not?

"A. Yes, I do.
[At this point an objection was made and sustained as to his answering 'why,' on the ground that it would be hearsay.]

"* * *

"Q. Did this F.B.I. officer have any files or records when he investigated and questioned you?

"A. Not in my presence. He asked me if I would make a statement. I told him that I would decline to make a statement until I had talked to Mrs. Duffy or her representative.

"* * *

"Q. My question is whether or not the Federal Bureau of Investigation officer in Lamar, Colorado, finally told you that he wasn't going to charge you?

"A. Yes, I was so informed."

On re-direct examination, defendant testified that he was not interviewed in Baton Rouge by F.B.I. Agents.

Numerous bills of exceptions were reserved during the course of trial, but only two bills, treating of the privilege invoked by F.B.I. Agents, were perfected and argued in this Court. They are embraced within the following errors defense counsel assigned to the rulings of the trial court:

"1. The court erred in holding that the F.B.I. Officers were privileged not to testify solely because they asserted an order of the Attorney General of the United States.

"2. The court erred in refusing the accused's request for a continuance so as to afford him an opportunity to test the validity and applicability of the order of the Attorney General of the United States pursuant to which the F.B.I. Officers claimed their privilege.

"3. The court erred and denied the accused a fair trial in violation of his right of due process guaranteed by Article 1, Sections 2 of the Constitution of the State of Louisiana, and by Article XIV, Section 1 of the Constitution of the United States, and in violation of his right to defend himself and have compulsory process for obtaining witnesses in his favor as guaranteed by Article 1, Section 9 of the Constitution of the State of Louisiana."

SPECIFICATION OF ERROR NO. 1

■ After the State had rested its case and the trial court had denied defense counsel's motion for a directed verdict, Timothy C. Dorche and Michael Baron, Special Agents for the Federal Bureau of Investigation, were called as witnesses by defense counsel. They invoked privilege and refused to testify. The trial judge denied defense counsel's motion to order them to testify and his motion for a continuance. Bills of Exceptions (not numbered) were reserved to his rulings; the testimony attached thereto recites in part:

"Q. Will you state your full name, sir?

"A. Timothy C. Dorche.

"Q. And what is your business or profession?

"A. I'm a Special Agent with the Federal Bureau of Investigation.

"Q. And I direct your attention to on or about August 14, 1969, and ask whether you had the occasion to investigate, in your capacity as Special Agent, a car theft from East Baton Rouge Parish, Louisiana, involving Clarence T. Andrews?

"A. I respectfully decline to answer any question in this matter pursuant to Departmental Order 3464 signed by the Attorney General on 1/13/53, supplemented by Departmental Order 324–64 signed by the Attorney General on

10/8/64 and published in the Federal Register on 10/10/64.

"Q. Do you, are you claiming privilege to refuse to answer any other questions concerning this case?

"A. Yes.

" * * *

"BY THE COURT:

"Q. What kind of order is this you're quoting to me?

"A. Your Honor, it's a privilege that's invoked by me at the instruction of the United States Attorney which, in his opinion, I need not testify in this matter and it relates to the fact that our files, the F.B.I. files are confidential.

"Q. And if I were to order you to testify anyhow, then what is the next step?

"A. I would have to decline again, Your Honor.

"Q. You've been ordered not to testify in this matter, is that right?

"A. I've been instructed not to testify.

"Q. By who?

"A. United States Attorney, Assistant United States Attorney Julian Murray.

"Q. Julian Murray?

"A. Yes, sir.

"Q. And he's located in New Orleans?

"A. Yes, Your Honor.

"Q. Is he still on the staff?

"A. Yes, he is.

"Q. I believe there is some Congressional Act of record which says that they can claim a privilege through the Attorney General's office. I have some hazy recollection of some statute like that. This is based on the idea that any F.B.I. files in connection with this alleged, alleged connection in regard to this particular crime is confidential and therefore you could not testify, is that right?

"A. Right, except by order of the Attorney General.

"Q. Does that apply in Federal Court, too?

"A. I don't know, Your Honor.

"THE COURT: Well, I'm not going to order him to testify.

"* * *

"Q. Will you state your full name, sir?

"A. Michael Baron.

"Q. What is your business or profession?

"A. I'm Special Agent for the Federal Bureau of Investigation.

"Q. Were you so employed on August 14th or thereabouts, 1969?

"A. I was.

"Q. And in connection with your duties did you have the occasion to investigate an automobile theft arising or allegedly arising in East Baton Rouge Parish involving one Clarence T. Andrews?

"A. Sir, I have been told by the United States Attorney, United States Department of Justice, to invoke the rule of immunity that's granted to members of Department of Justice regarding this matter. Now, that's Departmental, United States Department of Justice Order 3464, signed by the Attorney General on 1/13/53, supplemented by United States Departmental Order 324–64 signed by the Attorney General on 10/8/64 and published in the Federal Register on 10/10/64.

"Q. And you would decline to answer any questions that might be relevant to the subject which I mentioned in the last question relative to Clarence T. Andrews or anything relating to the alleged charges, is that correct?

"A. At this point, yes, sir."

Counsel for the defendant contends that, "The Court in this case did nothing more than ask perfunctory questions and took the mere claim through certain orders of the Attorney General as applicable without regard to the particular facts and circumstances of the instant case."

The Order, supra, referred to by the Federal Bureau of Investigation Agents recites:

"Title 28—JUDICIAL ADMINISTRATION

"Chapter I—Department of Justice

"[Order No. 324–64]

"PART 16—PRODUCTION OR DISCLOSURE OF MATERIAL OR INFORMATION

"Clarifying the departmental procedures relating to the production or disclosure of information or material in response to subpoena, order, or other demand:

"By virtue of the authority vested in me by the laws of the United States, including section 161 of the Revised Statutes (5 U.S.C. 22) and Section 2 of Reorganization Plan No. 2 of 1950 (64 Stat. 1261), Part 16 of Title 28 of the Code of Federal Regulations is hereby amended to read as follows:

"Sec.

16.1　Production or disclosure of official information or material in response to a subpoena, order, or other demand prohibited unless approved by the Attorney General.

"16.2　Procedure in the event of a demand for production or disclosure.

"16.3　Procedure in the event of an adverse ruling.

"AUTHORITY: The provisions of this Part 16 issued under sec. 2 of Reorganization Plan No. 2 of 1950, 64 Stat. 1261; R.S. 161, 5 U.S.C. 22.

"§ 16.1　Production or disclosure of official information or material in response to a subpoena, order, or other demand prohibited unless approved by the Attorney General.

"No officer or employee of the Department of Justice shall produce or disclose, in response to a subpoena, order, or other demand (hereinafter in this part referred to as a 'demand') of a court or other authority any information or material contained in the files of the Department of Justice or any other information or material acquired as a part of the performance of his official duties or because of his official status, without the prior approval of the Attorney General. For the purposes of this part, the term 'officer or employee of the Department of Justice' includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of, the Attorney General of the United States, including United States Attorneys, United States Marshals, and members of the staffs of those officials.

"§ 16.2　Procedure in the event of a demand for production or disclosure.

"(a)　(1)　Except as provided in paragraph (b) of this section, whenever a demand is made upon an officer or employee of the Department of Justice for the production or disclosure of information or ma-

terial contained in the files of the Department of Justice or for the production or disclosure of any other information or material acquired as a part of the performance of his official duties or because of his official status, he shall immediately notify the Attorney General of such demand. If possible, the Attorney General shall be notified before the officer or employee concerned replies to, or appears before, the court or other authority.

"(2) The appropriate United States Attorney, or such other attorney as may be designated for the purpose, shall appear with the officer or employee upon whom the demand shall have been made, and inform the court or other authority (i) that § 16.1 of this part prohibits the officer or employee from producing or disclosing the information or material demanded without the prior approval of the Attorney General, and (ii) that the demand has been, or is being, as the case may be, referred for the prompt consideration of the Attorney General. The United States Attorney, or the attorney designated, shall provide the court or other authority with a copy of the regulations prescribed in this Part and shall respectfully request the court or other authority to stay the demand pending the receipt of instructions or directions from the Attorney General concerning the demand.

"(b) Whenever a demand of the type described in paragraph (a) of this section is made upon an officer or employee of the Department of Justice by a court or other authority while he is appearing before, or is otherwise in the presence of the court or other authority, the officer or employee, or the United States Attorney or other appropriate Government attorney, acting on behalf of the officer or employee, shall (1) immediately inform the court or other authority that § 16.1 prohibits the officer or employee from producing or disclosing the information or material demanded without the prior approval of the Attorney General, and (2) offer to refer the demand for the prompt consideration of the Attorney General. Unless the court or other authority withdraws the demand, the United States Attorney, or other appropriate Government attorney, shall provide the court or other authority with a copy of the regulations prescribed by this part and shall respectfully request the court or other authority to stay the demand pending the receipt of instructions or directions from the Attorney General concerning the demand.

"§ 16.3 Procedure in the event of an adverse ruling.

"If the court or other authority declines to stay the effect of the demand in response to a request made in accordance with either § 16.2(a) (2) or (b) pending the receipt of instructions or directions from the Attorney General, or if the court or other authority rules adversely on any claim of privileges that may be asserted in conformity with the provisions of this part, or with

instructions or directions issued by the Attorney General pursuant thereto, the officer or employee upon whom the demand shall have been made shall, pursuant to the regulations prescribed in this part, respectfully decline to produce or disclose the material or information demanded (United States ex rel. Touhy v. Ragen, 340 U.S. 426, [462] 71 S.Ct. 416, 95 L.Ed. 417).

"Order No. 260—62 is hereby superseded.

"The provisions of this order shall be effective when this order is filed for publication in the FEDERAL REGISTER.

"Dated: October 8, 1964.

NICHOLAS DEB. KATZENBACH,
Acting Attorney General.

"[F. R. Doc. 64–10403; Filed, Oct. 9, 1964; 9:09 a. m.]"

Federal Register, Saturday, October 10, 1946, pp. 14027–14028.

5 U.S.C.A., Sec. 301, Derivation, 5 U.S.C. 22, provides:

"The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public." Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 379.

The case of United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), mentioned above in Order No. 324–64 of the Attorney General, was a contempt proceeding. Therein, the United States Supreme Court held that an order promulgated by the Attorney General restricting disclosure as to all official files, documents, records, and information in offices of the Department of Justice was valid, and that under the circumstances, George McSwain, Agent in Charge of the Federal Bureau of Investigation at Chicago, properly refused to produce the documents and material called for in a subpoena and could not be held in contmpt.

In United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, 32 A.L.R.2d 382 (1953), the United States Supreme Court held that the court itself must determine whether the circumstances of the case are appropriate for the assertion of privilege; it stated:

" * * * The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

"The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. The latter requirement is the only one which presents real difficulty. As to it, we find it helpful to draw upon judicial experience in dealing with an analogous privilege, the privilege against self-incrimination.

"The privilege against self-incrimination presented the courts with a similar sort of problem. Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses. Indeed, in the earlier stages of judicial experience with the problem, both extremes were advocated, some saying that the bare assertion by the witness must be taken as conclusive, and others saying that the witness should be required to reveal the matter behind his .claim of privilege to the judge for verification. Neither extreme prevailed, and a sound formula of compromise was developed. This formula received authoritative expression in this country as early as the Burr trial. There are differences in phraseology, but in substance it is agreed that the court must be satisfied from all the evidence and circumstances, and

'from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure would result.' Hoffman v. United States, 341 U.S. 479, 486, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1123, 1125 (1951). If the court is so satisfied, the claim of the privilege will be accepted without requiring further disclosure." See, Davis v. Braswell Motor Freight Lines, Inc., 5 Cir., 363 F.2d 600.

In Heine v. Raus, 399 F.2d 785 (1968), the United States Court of Appeals, Fourth Circuit, affirmed the right of the CIA in the case to invoke the governmental privilege against disclosure of state secrets to the extent it was allowed by the district court; it stated, "Disclosures *in camera* are inconsistent with the normal rights of a plaintiff of inquiry and cross-examination, of course, but if the two interests cannot be reconciled, the interest of the individual litigant must give way to the government's privilege against disclosure of its secrets of state." Remand 305 F. Supp. 816, aff'd 432 F.2d 1007.

In State of North Carolina v. Carr, 264 F.Supp. 75 (1967), the United States District Court, W.D. North Carolina, Charlotte Division, held that a Special Agent of the Federal Bureau of Investigation to whom a subpoena duces tecum had issued from a state court was not in contempt, when, in

accordance with directive from the Attorney General, he declined to answer questions in court as to information obtained by him in an official investigation. Cf. First National Bank & Trust Co. of Waynesboro, Pa. v. Union Bank & Trust Co., 5 Cir., 396 F.2d 795.

The above jurisprudence holds that where a government head or employee invokes a privilege and refuses to make disclosure or to testify, the ultimate determination of the privilege remains with the court. As stated supra, the trial judge determined herein that Special Agents Timothy C. Dorche and Michael Baron of the Federal Bureau of Investigation did not have to testify; he undoubtedly was satisfied that the Attorney General's Order and the directive of the Assistant United States Attorney, supra, should prevail. We find no abuse of discretion on the part of the trial judge and find no reversible error.

The testimony attached to the Bills of Exceptions, incorporated in the Assignment of Errors, discloses no reason for non-respect of Federal Orders. Under the circumstances of this case, we find that the Order of the Attorney General had the force and effect of law and that the trial judge properly obeyed it. "It is now well settled that it is for the courts, and not for the executive branch of the government, to determine whether a document sought to be withheld by the government under a claim of privilege contains diplomatic or military secrets, or is otherwise of such a nature that disclosure would be harmful to the public interest. The rule stated above applies with particular force where the government asserts the broad privilege against disclosure of official routine information." 58 Am.Jur., Witnesses, Sec. 533, Cumulative supplement, 1970—July, 1971, p. 61. See, 97 C.J.S. Witnesses § 264, p. 747.

Specification of Error No. 1 is without merit.

## SPECIFICATION OF ERROR NO. 2

■ After ruling that the Federal Bureau of Investigation Agents were entitled to invoke privilege, the trial judge, as stated supra, refused to grant defense counsel's motion for a continuance.

Herein, counsel for the defendant quotes the following from United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417, "The constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling," and he argues that, "The instant case presents the factual situation contemplated by the Court in its quoted language, and the granting of a continuance or delay to afford the accused the opportun-

ity to challenge the validity of the application of the order to the particular facts of this case was indispensable."

When defense counsel's motion for a continuance was made, the State had rested its case and the testimony of defense witnesses was being adduced. Defense counsel argued that the accused should be given an opportunity to challenge in the appropriate forum the ruling of the Attorney General, supra.

This was a State trial, not a federal proceeding. We find no reason why this State proceeding should have been continued in order to permit the filing of proceedings in another forum. Additionally, Article 708 of the Code of Criminal Procedure provides that a continuance shall not be granted after the trial or hearing has commenced. We conclude that the trial judge neither abused his discretion nor committed reversible error in denying defense counsel's motion for a continuance.

Specification of Error No. 2 is without merit.

## SPECIFICATION OF ERROR NO. 3

■ Defense counsel contends under this Specification of Error that defendant was denied a fair trial and suffered violation of his constitutional rights; he argues in brief:

"Because the suppression of evidence by the state prosecutor is a violation of the 14th Amendment and by a Federal Officer a violation of the 5th Amendment an accused in a state prosecution is constitutionally protected against the 'cross-fire' of one government suppressing while the other prosecutes an accused for a crime to which the suppressed evidence is relevant and material.

"* * *

"Even though the prosecutor did not directly suppress evidence here, the combination of the state prosecution while permitting another arm of government of the same people to suppress the evidence is an indirect suppression and fundamentally unfair and, therefore, within the ambit of the protective sphere of the concept of ordered liberty and basic fairness which due process encompasses.

"The impact of the state prosecution federal suppression cross-fire is particularly acute and harsh where the conduct which is the subject of the prosecution by one government is a crime or a substantive ingredient of a crime under the laws of the other government. The acute and harsh impact is present here, for the federal officers can deprive the accused of exculpating evidence which weakens its crime under the Dyer Act but which suppression enables the state to get the job done for both by convicting under the state theft law.

"This is reminiscent of the outmoded 'silver platter' doctrine in unlawful search and seizure and self-incrimination when one government could deprive by unlawful search or compulsory incrimination and the other could use the fruits thereof as evidence to convict. But when a right becomes a constitutional right binding on the federal government by the Fifth (or other Bill of Right) Amendment and on the state by the Fourteenth Amendment, then neither may deprive so as to cause the other to obtain a windfall on a silver platter.

" * * *

"Since the Court was awake to the reality of the unfairness in the 'silver platter' days, surely it will not countenance the use of silver platter tactics when its use is no longer permissible because of constitutional proscription through the guaranty of fair trial."

As stated supra, this is a State prosecution and trial was conducted in a State court. Defense counsel has not shown that the State suppressed any evidence and admits, supra, that the prosecutor did not directly suppress evidence. Witnesses for the accused invoked privilege, and, as found supra, the trial judge correctly ruled that they did not have to testify. Any evidence the witnesses had in their possession or within their knowledge was communicated to the Department of Justice. That Department makes independent findings as to whether it will prosecute under Federal Laws. The trial judge had no control over the conclusions of Federal Attorneys; his rulings were based entirely on Louisiana Law. The record discloses that the trial judge conducted this trial in a proper manner and committed no reversible error. We do not find that the defendant experienced an unfair trial. We find no violation of his constitutional rights.

Specification of Error No. 3 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., dissents, adhering to the views expressed in DIXON, J.'s dissent.

DIXON, Justice (dissenting).

I must respectfully dissent.

I cannot agree with the reasoning of the majority in its ruling on Bill of Exceptions No. 1. We hold that under some federal rules and regulations, FBI agents can refuse to answer any question when summonsed as defense witnesses. Then, when the defense attempts to avail itself of a remedy in accordance with the same federal rules and regulations, he is denied the continuance because, we say, "this was a state trial, not a federal proceeding."

We have not been made aware of any state statute or jurisprudential rule which

grants a privilege to an FBI agent that will allow him to decline to testify in a state prosecution.

There are two possibilities: (1) the disclosure of the particular evidence sought was not prohibited by the federal regulations; (2) the evidence sought was irrelevant. These possibilities should have been explored, instead of simply holding that an FBI agent might, when he chooses, announce that he will not testify because of an order from an assistant United States attorney.