AYRES, Judge.
Plaintiff, employed as a patrolman with the Bossier City Police Department, was dismissed from service. The Bossier City Municipal Fire and Police Civil Service Board upheld the order of dismissal. Upon plaintiff’s appeal to the district court, the order was sustained and the dismissal upheld. From that judgment, plaintiff prosecutes an appeal to this court.
Plaintiff’s employment with the Bossier City Police Department began on May 8, 1968. During the course and scope of his employment, plaintiff sustained, on the night of September 14, 1968, the blast of a shotgun load to his right arm. On that occasion he was on a stake-out attempting to apprehend a prowler at a private residence.
*376 Severely and painfully injured, plaintiff was immediately admitted to a hospital for treatment, where he remained until October 4, 1968. A second period of hospitalization followed from November 12, 1968, to November 19, 1968. During his hospitalization, plaintiff received extensive medical treatment, including tendon transplants, in an attempt to repair damage to his arm. He returned to work during the early part of 1969 and continued in his employment as a patrolman until July 4, 1971, when he concluded he could no longer, because of his disabilities, perform the duties of his employment. “Shots” were required to relieve pain. Difficulties were experienced in the handling of his gun, grappling with violators and suspects, and even driving the patrol car.
There is no question of plaintiff’s disability to perform the duties of a patrolman. The several experts who testified or made reports were generally in accord on this. No expert expressed an opinion to the contrary.
Dr. Heinz K. Faludi, a neurological surgeon, examined plaintiff on July 29, 1971, and gave a detailed recital of his findings as to plaintff’s injuries. Dr. Faludi stated plaintiff had sustained a permanent residual disability of 30% to his right arm, said disability including diminished strength in his arm and loss of power to grasp with his right hand. (It may be noted here that plaintiff is righthanded.)
Dr. C. H. McCuller, coroner for the Parish of Bossier, reported that plaintiff would not be able to perform the duties of a policeman as he would not be able to handle a gun. Noted also in the transcript of evidence is the doctor’s testimony to the same effect. The doctor suggested, however, that plaintiff could perform the duties of a desk or file clerk.
Dr. Simeon H. Wall, a specialist in plastic and reconstructive surgery, reported that plaintiff was found by him to have a poor grip, secondary to an antagonistic action of tendon transfers, and that, with the reinnervation of his exterior muscles, plaintiff had a very strong release or extension when he attempted to flex his wrist. He was found not able to flex his wrist when he made a fist. The doctor, in his report, further stated that plaintiff was unable to hold a gun in his right hand after the gun had been discharged, due to the aforesaid antagonistic muscle action which the doctor characterized as a real probelm. The doctor concluded that plaintiff was neither physically nor psychologically able, at the time of his report, to function as a patrolman. A change of jobs or additional surgery were listed as plaintiff’s recourses.
Dr. W. W. Fox, an orthopedic surgeon, was of the opinion that plaintiff had sustained a 20-25% partial, permanent disability, but he was of the opinion that plaintiff could discharge the duties of a lesser phsyical nature than those of a policeman.
Therefore, all the experts agree, and there is absolutely no evidence to the contrary, that plaintiff is disabled to perform the duties of his employment as a patrolman by reason of the injuries sustained by him in the performance and in the discharge of his duties.
The charges directed to plaintiff, and upon which his termination of service was made, were set forth in a registered letter from the Chief of Police dated August 18, 1971, which charges were condensed in a notification of plaintiff’s discharge dated August 24, 1971, the gist of which was that plaintiff absented himself without cause from his employment.
The record to which we have referred hereinabove makes it very clear that plaintiff’s absences from his employment were due to his injuries and his inability to perform the duties of a patrolman. This proof is abundant and uncontradicted. The record contains not a whit of evidence to support a conclusion that plaintiff absented himself from his employment without cause, but that his absence was occasioned by good cause by reason of on-the-job injuries and *377 disabilities resulting therefrom, all as shown hereinabove.
Mrs. Parker’s testimony is in the record, uncontradicted, to the effect that she notified the Police Department daily of her husband’s absences and the reasons therefor — that the absences were caused by his injuries and disabilities. These notices continued until proceedings were instituted to bring about his discharge.
The notification to plaintiff of the charges against him included a recital that plaintiff had frequented the “Pirate’s Den” and the “Bistineau Club” to play pool. There is not a scintilla of evidence in the record to support this accusation.
We are not unmindful of the provisions of LSA-R.S. 33:2501, limiting our jurisdiction in cases of this character. There it is said, in pertinent part:
“This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds.”
A question of the board’s good faith in the instant case is inappropriate and has no bearing in a decision of the matters presented for determination. Good faith is presumed until questioned; bad faith has not been charged nor attempted to be shown. There is no showing whatsoever whereby bad faith could be impugned to any member of the board. However, the question is solely whether plaintiff was discharged for cause, and we have resolved that question in plaintiff’s favor. There is no proof in the record that supports a contrary view or conclusion.
The record, however, does reflect that after plaintiff’s dismissal a recommendation or suggestion was made that he accept a desk job. His refusal was not shown to be arbitrary but to have been based on the uncertainty of coverage under Civil Service. Plaintiff did not know but questioned whether coverage was afforded. Those making the suggestion were no better informed. This matter, however, is impertinent. The suggestion was made, as aforesaid, after plaintiff had been discharged and could have had no bearing upon the validity of his dismissal from service.
For- the above-stated reasons, we are of the opinion that plaintiff was wrongfully discharged as a patrolman and that he should be reinstated. Whatever rights, if any, he has to sick benefits, retirement pay, or otherwise should not have been so summarily dispensed with as would result from his dismissal without cause. Upon reinstatement, plaintiff will of course be entitled to all the benefits and privileges accorded him by law. These, however, are not issues before the court in the instant case.
The judgment appealed is, for the aforesaid reasons, annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that plaintiff, Raymond A. Parker, be reinstated to his position as patrolman with the Bossier City Police Department, and that appropriate directives and orders be accordingly issued.
The defendant, the City of Bossier, is taxed with all such costs as are authorized by law to be assessed against it.
Reversed and rendered.