337 So.2d 549 (1976)
In the Matter of Gary W. GEIGER, Plaintiff-Appellant.
No. 12969.
Court of Appeal of Louisiana, Second Circuit.
August 31, 1976.
Rehearing Denied September 27, 1976.
*550 Hal V. Lyons and Glen H. Smith, by Glen H. Smith, Shreveport, for plaintiff-appellant.
John Gallagher and Charles C. Grubb, by Charles C. Grubb, Shreveport, for defendant-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied September 27, 1976.
MARVIN, Judge.
Plaintiffclassified under Civil Service as a Driver for the Shreveport Fire Departmentappeals his discharge from employment.[1] The Municipal Fire and Police Civil Service Board of Shreveport, after a hearing, sustained plaintiff's discharge and the lower court affirmed the Board. We affirm the lower court.
LSA-R.S. 33:2501 provides that a regular employee in classified service who feels he has been discharged "... without just cause" may demand and obtain a hearing and investigation by the Board. The appeal from the Board's decision is to the district court, and eventually to this court, where the determination is confined to whether the decision of the Board "was made in good faith for cause under the provisions of [law]." See Parker v. City of Bossier City, 276 So.2d 375 (La.App.2d Cir. 1973).
After being employed for about eight years, plaintiff was discharged on August 8, 1973, because of violations of regulations of the Department concerning moustaches and hair and for insubordination or discourtesy to a superior.
The record compiled before the Board fully supports the results below. The regulation (General Order of October 1, 1970) of which plaintiff primarily complains requires sideburns to be closely trimmed and not to extend below the earlobe and moustaches not to extend more than one-fourth inch outward and not beyond the corners of the mouth. Reasons for the requirements are given in the order. These reasons include the need for good taste, appearance, uniformity, because of frequent contact with the general public and also to make certain that there be no impediment in the use of masks or other emergency equipment. Testimony before the Board explained and elaborated upon the latter reason.
Plaintiff's sometimes immediate superior (Assistant Chief Fouts) testified that he had required several firemen to trim their moustaches to bring them to regulation since the adoption of the 1970 general order. He estimated he had done this on about 20 separate occasions and that several *551 times he had required plaintiff to comply with the regulation. On each occasion until the 1973 incidents with plaintiff, all firemen, including plaintiff, promptly complied.
In April, 1973, Chief Fouts, required plaintiff to go before the Shreveport Fire Chief regarding plaintiff's moustache. The Fire Chief suspended plaintiff one day and told him he could return to work as soon as he got his moustache trimmed. Plaintiff allowed several days to elapse before trimming his moustache and returning to duty. When he returned to work he attempted to persuade Fouts and other personnel that the moustache regulation should be modified or rescinded and that plaintiff was being "singled out" with respect to complying with its requirements. About one month after plaintiff returned to duty, his moustache was noticed by Assistant Chief Fouts, who told plaintiff to have it trimmed. Plaintiff again attempted to persuade Fouts that the regulation should be rescinded or modified and again Fouts and plaintiff went to the Fire Chief where plaintiff suggested some change in the regulation. The Fire Chief did not discuss plaintiff's contentions, but told plaintiff to get his moustache properly trimmed and return to work. Plaintiff complied.
About July 30, 1973, plaintiff declared that he had seen other firemen whose moustaches were not trimmed to regulation and that he was going to let his moustache grow as he wanted it. On August 8, 1973, Fouts noticed plaintiff's moustache and told him to trim it to regulation. Plaintiff lost his temper, used profanity, said he was tired of being "picked on" and discriminated against, and said he was not going to cut his "g d moustache . . ." but was going to "fight" the regulation and if necessary fight with his fists. Fouts then required plaintiff and several other firemen employee and superiors over the issue of his to come into his office. There plaintiff repeated much of what he had said before the other firemen, including some of the profanity, which indirectly referred to Assistant Chief Fouts. Fouts verbally dismissed plaintiff. Outside the fire station to others, plaintiff threatened that he should go back "inside" and whip a portion of the "s. o. b.'s" anatomy [abbreviation and paraphrasing supplied].
Plaintiff was formally discharged the next day by written order recommended by the Fire Chief and approved by the Commissioner of Public Safety and the Chairman of the Fire and Police Civil Service Board.
Plaintiff contended here and below discriminatory and arbitrary application of the regulation toward him. The record does not support plaintiff in this contention, but is to the contrary.
Plaintiff also contends the record (more than 250 pages of testimony by fire department personnel at all levels of service, plus exhibits and pleadings) does not support either the allegations in the written discharge or the decision of the Board. We cannot agree. With statements of the incident of August 8, 1973, attached, the written order, and the Board's decision of February 20, 1974, make specific reference to the moustache violations and to the insubordination.[2]
Plaintiff's remaining contentions are (1) that the record does not show that plaintiff's conduct had a "substantial relationship to" or impeded the "efficiency" of the "public service" of himself or the department; and (2) that his "constitutional rights" were violated.
Cause, as used in the civil service statutes, was defined by the Supreme Court in *552 Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5, 9 (1962).
"Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service. Of course there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present, and any disciplinary action by the commission is arbitrary and capricious."
Leggett's conduct in question occurred when he was conducting a private business when he was not on duty as a civil service employee. Since Leggett, employees who have been discharged or disciplined have contended that the violation must be supported by independent evidence that it impaired the efficiency of the public service. Such a contention was made in Jones v. Louisiana Dept. of Highways, 259 La. 329, 250 So.2d 356 (1971). There the offending conduct occurred on the job. The Supreme Court said:

"Unlike the case of off-the-job conduct, such as that in the Leggett case, disciplinary action for the violation of Civil Service Rules need not be supported by independent evidence of impairment of the efficiency of the service . . ." 250 So.2d 359. (Emphasis supplied).
We interpret the pronouncement to establish the rule that the offending conduct need not be shown to have impaired the efficiency of service if the offending conduct occurred on the job. Under this interpretation, while it would not be necessary to show that plaintiff's conduct with respect to his moustache impaired the efficiency of the service, we nonetheless feel that it has been shown in this case.
Plaintiff allowed his moustache to extend beyond the corners of his mouth and to exceed the length or thickness proscribed by the regulation. Testimony on this point included statements to the effect that " . . . a long moustache . . . would . . . affect the face piece [of a gas mask] and keep it from adhering to the skin, and the hair would not let it lock in safely and it would let poisonous gas in . . ."
The requirement of the department relating to appearance and uniformity, given as reasons in the order, were noted with approval by the United States Supreme Court in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). A similar regulation of a county police department (moustache shall not extend over the top of the upper lip or beyond the corners of the mouth) was at issue. The United States Supreme Court said:
". . . (deference is due) Suffolk County's choice of an organizational structure for the police force. Here the county has chosen a mode of organization which it undoubtedly deems the most efficient in enabling its police to carry out the duties assigned to them under state and local law. Such a choice necessarily gives weight to the overall need for discipline, esprit de corps, and uniformity." 96 S.Ct. 1445.
While the broad allegation of "unconstitutionality" is a mere conclusion and is insufficient for lack of specificity to properly raise the issue, we shall nonetheless consider plaintiff's contentions to this effect.[3] In Kelley, supra, the United States Supreme Court granted certiorari for the express purpose of considering the constitutional issues. The United States Supreme Court said:
". . . The constitutional issue to be decided by these courts is whether petitioner's determination that such regulations should be enacted is so irrational *553 that it may be branded `arbitrary,' and therefore a deprivation of respondent's `liberty' interest in freedom to choose his own hair style. Williamson v. Lee Optical Co., 348 U.S. 483, 487-488, 75 S.Ct. 461, 464-465, 99 L.Ed. 563, 571-572 (1955). The overwhelming majority of state and local police of the present day are uniformed. This fact itself testifies to the recognition by those who direct those operations, and by the people of the States and localities who directly or indirectly choose such persons, that similarity in appearance of police officers is desirable. This choice may be based on a desire to make police officers readily recognizable to the members of the public, or a desire for the esprit de corps which such similarity is felt to inculcate within the police force itself. Either one is a sufficiently rational justification for regulations so as to defeat respondent's claim based on the liberty guaranty of the Fourteenth Amendment." 96 S.Ct. 1446.

CONCLUSION
Should we disagree with the Board's decision as to the moustache issue (which we do not), we would affirm the Board in upholding the discharge on the ground of insubordination. Plaintiff was clearly insubordinate on August 8, 1973, to his superior officer in violation of the regulations of the Shreveport Fire Department and R.S. 33:2500, subd. A(4).
At appellant's cost, judgment is
AFFIRMED.
NOTES
[1] Applicable provisions for hearings, appeals and standards of review at each level of hearings are found in Art. 14, § 15.1, Louisiana Constitution, 1921, and in LSA-R.S. 33:2471, et seq. See particularly Art. 14, § 15.1(31), Louisiana Constitution, 1921, and LSA-R.S. 33:2501.
[2] The Board's decision reads in part: "The Board sustains the action of the Appointing Authority and further finds on its own motion that the evidence presented at the hearing in this matter showed such a continuing pattern of incidents and confrontations between this employee and superiors over the issue of his moustache and hair finally resulting in the episode involving Chief Fouts at Fire Station No. 16 on or about August 8, 1973, which the Board holds to have constituted insubordination, as to have made termination of employment in the public interest for the best interests of the departmental service."
[3] "It is a well settled rule that before a court will consider the constitutionality of a law, he who urges its unconstitutionality must show specifically wherein it is unconstitutional, (citations omitted). A general allegation to the effect that an entire statute is unconstitutional without specifying the relationship of this issue to the determination of the case at bar does not meet the requirements . . ." Michell v. Louisiana State Board of Optometry Exam., 146 So.2d 863, 869 (La.App.3rd Cir. 1962).