668 So.2d 1167 (1996)
Eric G. WILSON
v.
JEFFERSON PARISH DEPARTMENT OF PARKS & RECREATION.
No. 95-CA-470.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1996.
Writ Denied April 19, 1996.
*1169 Joel P. Loeffelholz, New Orleans, for Appellant Eric G. Wilson.
Clement P. Donelon, Metairie, for Appellee Jefferson Parish Department of Parks & Recreation.
Before WICKER and CANNELLA, JJ., and CHIASSON, J. Pro Tem.
CANNELLA, Judge.
Plaintiff, Eric G. Wilson (Wilson), appeals from a judgment of the Jefferson Parish Personnel Board, upholding his termination from employment. For the reasons which follow, we affirm.
Wilson had been an employee of the Jefferson Parish Parks and Recreation Department (Recreation Department) for over nine years when he was notified by letter dated November 17, 1993 that his employment was being terminated. Prior to the termination, on November 16, 1993, Wilson was asked to attend a meeting in the office of Charles Domino (Domino), the Director of the Recreation Department, in which certain allegations of his misconduct were to be discussed. In addition to Wilson and Domino, three other Recreation Department personnel were in attendance, Michael Quigley (Quigley), Agnes Courtney and Donald Rice. At the outset of the meeting, Quigley informed Wilson of, among other things, three instances with which they were concerned regarding his job performance, (1) operating the parish vehicle assigned to him while under the influence of alcohol on September 3, 1993, (2) allowing someone other than parish personnel to operate the parish vehicle assigned to him and (3) failure to properly supervise the employees under his control. Wilson was given an opportunity to respond to the allegations of misconduct. The following day, Wilson's employment was terminated and he was so informed by letter dated November 17, 1993 and signed by Quigley, the assistant director of the Recreation Department with the approval signature of Domino, the director. Wilson filed an appeal with the Jefferson Parish Personnel Board (Personnel Board) contesting his dismissal. Wilson moved for a summary disposition of his appeal, arguing that only the Parish President is authorized to terminate his employment. Wilson's motion was denied by the Board after a hearing. Thereafter, a three day hearing on the merits of Wilson's appeal was held. The Personnel Board rendered a decision maintaining Wilson's dismissal. Wilson appealed herein, contesting the Personnel Board's decision.
On appeal, Wilson asserts five assignments of error. First, Wilson argues, as he did in his request for summary disposition, that the disciplinary action taken against him was not taken by the authorized appointing authority. Disciplinary action against a classified civil service employee can only be taken by the proper appointing authority. He further argues that the sole statutory appointing authority for the Parish of Jefferson is the Parish President or the head of a department, if authorized by the Parish President. Jefferson Parish Charter, Art. 3 § 3.03B.[1] Wilson contends that there is no *1170 evidence that the head of the Recreation Department was delegated the Parish President's power to remove employees and further that, even if the department head was so authorized, the action taken against him was taken by Quigley, the assistant director.
The Recreation Department argues that, for at least the past thirty years, the removal of employees from service has always be done by the department directors. It is argued that this thirty year custom constitutes an implied delegation of removal authority to the department directors which is valid under the parish charter.
A similar argument to that asserted by Wilson herein was addressed in Dept. Of Agriculture & Forestry v. Jones, 93-0128 (La.App. 1st Cir. 3/11/94), 633 So.2d 900, writs denied, 94-0907 (La. 5/20/94), 637 So.2d 482. In Jones, the court held that the appointing authority may be transferred from one public employee to another by an implied delegation. The court held that an implied delegation of appointing authority arises when there is sufficient evidence of past practices and customs over time which show that the appointing authority intended to delegate that authority to another.
The Personnel Board found that "[h]istorically, as well as by custom and practice, the various department heads and/or directors of those departments are vested with their authority to not only hire, but to terminate and/or otherwise discipline employees with the venue of their respective departments." This finding was supported by introduction of the job description of the Director of the Recreation Department which included the duty of hiring and terminating employees of the department. We find no error in the Personnel Board ruling that in Jefferson Parish the power to remove employees in a department has been delegated to the department directors.
Appellant also argues that even if the director had authority to terminate his employment, his termination was improper because it was signed by the assistant director, Quigley.
We find no merit in this argument. The termination letters sent to Wilson on November 17, 1993 and supplemented on January 21, 1994 were signed by both Quigley and Domino. The signature of the director, Domino, is on the letters, indicating his approval of the termination. We find this sufficient compliance with the requirement that termination be by the director. Therefore, we find no merit in appellant's argument that his employment was not terminated by the proper appointing authority.
Next Wilson argues that his termination should be set aside because he was not afforded adequate due process. He contends that he was not given written notice of the pre-termination hearing and that it therefore violated due process requirements.
Tenured or classified civil servant status is recognized as a property right under the Louisiana Constitution and, as such, cannot be deprived without due process of law. La. Const. Art. I, § 2; Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986). However, due process is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
Due process requires "some kind of a hearing" prior to the termination of an employee with a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, the pretermination hearing does not have to be elaborate; nor does it have to definitively resolve the propriety of the discharge. Rather it should be a preliminary determination of whether there are reasonable grounds to believe that the charges against the employee are true and thereby act as a initial check against mistaken decisions. Cleveland *1171 Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
Loudermill involved the termination of two classified civil service employees and posed the question of whether their due process rights had been violated when their employment was terminated without a pre-termination hearing. The United States Supreme Court held that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures. The Court stated:
[W]e emphasize that a presuspension "hearing" need not be elaborate. Nor does it need to definitely resolve the propriety of the proposed action. Basically, it need only provide the employee with an opportunity to present his side of the story, either orally or by written response, as an initial check against arbitrary decisions.
Loudermill, 470 U.S. at 544, 105 S.Ct. at 1495.
Applying the above principles to the facts of this case, we find that Wilson received all the process that he was due under the circumstances. He was informed of the problems that the appointing authority had with his employment and he was given an opportunity to respond to each problem. He essentially admitted that he had had a few beers in the department parking lot and that he thereafter drove his assigned parish vehicle attempting to get home. He admitted that he was stopped by a police officer and questioned. He stated that he had an acquaintance, who was a parish employee, drive the vehicle with him as a passenger to his house after he was stopped by the officer. He denied that his employees had wasted company time or delayed unnecessarily in building the Williams and Lakeshore playgrounds. We find that this notice and opportunity to respond, coupled with the full post-termination evidentiary hearing, satisfies the requirements of due process.
Wilson's next assignments of error take issue with the factual findings of the personnel board. Wilson argues that ground one in the letter of discipline, that he "violated the Jefferson Parish Substance Abuse Policy by operating the Parish vehicle assigned to [him] while under the influence of alcohol," has not been proven by the appointing authority. More particularly, Wilson contends that he did not violate the parish substance abuse policy because his consumption of alcohol took place after work hours and the substance abuse policy defines "under the influence of alcohol" in terms of "during the employee's work day" and the impairment of the performance of "job duties."[2]
The Recreation Department argues that it has presented adequate evidence of Wilson's operation of a parish vehicle while under the influence of alcohol. The department points out that an investigator who had Wilson under surveillance testified that Wilson consumed at least four beers on parish property in the parking lot between the hours of 5:00 p.m. and 6:30 p.m. Wilson then entered a parish vehicle which had been assigned to him to take home and attempted to drive the vehicle home. Wilson was stopped after crossing the Huey P. Long bridge by a police officer and was given a field sobriety test which the officer testified that Wilson failed. The department argues that they met their burden of proof.
The Personnel Board held that "[t]he evidence more that sufficiently established that this Appellant had multiple beers during the course of perhaps an hour and a half and that he was stopped by the Causeway Police and given a field sobriety test which he failed."
This court has held that a dismissal of a civil servant "for cause" is synonymous with legal cause. Appointing Auth., Chief of Police v. Trippi, 499 So.2d 1177 (La.App. 5th *1172 Cir.1986); City of Westwego v. McKee, 448 So.2d 166 (La.App. 5th Cir.1984). Legal cause for disciplinary action has been held to exist where "the facts found by the commission, disclose that the conduct of the employee impairs the efficiency of the public service." Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962). The burden of proving legal cause before the commission shall be on the appointing authority. Appointing Auth., Chief of Police v. Trippi, supra. Thus, the appointing authority must demonstrate, by a preponderance of the evidence, that the employee's conduct did in fact impair the efficiency and orderly operation of the public service.
The Personnel Board has a duty to decide, independently from the facts presented whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Walters v. Dept. of Police of New Orleans, 454 So.2d 106 (La.1984). On appeal, the reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commissions's findings. Walters v. Dept. of Police of New Orleans, supra.
Based on the above principles and our review of the record we find no error in the Personnel Board findings. Wilson was on parish premises when he consumed the alcohol. Evidence of his alcohol consumption by an eye witness was clear. Wilson had been granted the privilege of being assigned a parish vehicle for take home. Thus, during his drive home he was in the course and scope of his employment and engaged in his job duties. Michaleski v. Western Preferred Cas. Co., 472 So.2d 18 (La.1985); Folse v. American Well Control, 536 So.2d 686 (La. App. 3rd Cir.1988). The parish substance abuse policy defined parish premise as "includ[ing] all Parish property, offices, facilities, land, buildings, structures, fixtures, installations, automobiles, trucks and all other vehicles and equipment...." When Wilson was stopped by the officer and given a field sobriety test, the officer testified that Wilson failed the test. Thus, as proscribed in the substance abuse policy, Wilson's ability to perform his job duties, to drive the parish vehicle home, was impaired by his use of alcohol.
Moreover, the grounds for the disciplinary action clearly set out the conduct for which Wilson was being disciplined, i.e., "operating the Parish vehicle assigned to you while under the influence of alcohol" and did not solely rely on the violation of the Parish substance abuse policy. Operating a vehicle while intoxicated is a criminal offense. La. R.S. 14:98. The record clearly supports this factual finding by the board.
Wilson next argues that the Personnel Board erred in affirming his discipline based on ground number two, that he allowed a non-Parish employee to operate the vehicle assigned to him because such action was not expressly prohibited in the Recreation Department Employee Handbook. He also contends that proof was lacking that the person who drove the vehicle was not a Parish employee.
The Personnel Board found that Wilson had allowed a non-employee to drive the parish vehicle and that such action was a violation of the Recreation Department Policy G-1 as revised June 1990. We find no manifest error in this part of the Personnel Board judgment.
The employee handbook provides that an employee may be disciplined for failing to follow any department instructions, whether verbal or written. The handbook also expressly provides, under the section entitled "Motorized Equipment" that "No one is allowed to authorize non-employees to drive or ride upon these vehicles." Admittedly, this section pertains to the motorized playground equipment, like grass cutters and golf carts, but it is obvious that the same would apply to parish automobiles where the potential for harm and Parish liability is substantially greater.
Furthermore, in Quigley's testimony, allowing non-employees to drive your assigned vehicle was prohibited by the Recreation Department policy book, specifically, section G-1. That section provided that Parish employees in the classified and unclassified positions *1173 can operate Parish owned vehicles. It goes on to say that no unauthorized passengers are to be allowed in the parish vehicle. Quigley testified that the intent of these provisions was made clear to the employees that non-employees could not drive the parish vehicles. Indeed, it seems that Wilson understood the parameters of whom might drive his assigned vehicle. In questioning, where he stated that his brother-in-law drove the vehicle, he admitted that his brother-in-law was not authorized by anyone in the department to drive the vehicle. Even on appeal there is no assertion that Wilson did not know that he was not to allow non-employees to drive his assigned parish vehicle.
Based on the foregoing, we find that when the rule books, handbooks and department policies are read together, it was made clear to Wilson that he was not to allow non-employees to drive his assigned parish vehicle.
Wilson also argues that there was insufficient proof that a non-Parish employee drove the vehicle. Wilson testified at the hearing that he telephoned his wife who came out, with her brother, to the location where Wilson had been stopped and it was Wilson's brother-in-law, a parish employee, who drove the parish vehicle, driving Wilson to his home. The brother-in-law testified similarly. However, contrary testimony was presented. The investigator testified that the person who drove the vehicle did not arrive at the location some thirty minutes later, but was standing around the convenience store where Wilson was stopped by the police. Further, the investigator stated that the driver did not drive Wilson home as he testified, but drove him only about one and a half miles to a Shell station and then turned the vehicle back over to Wilson who drove it home. It also appears that at the pre-disciplinary hearing, Wilson gave his employer the name of a different person whom he said drove him home that evening. When that information could not be substantiated, Wilson came up with the name of his brother-in-law. Based on the record before us, where there were two permissible views of the evidence, we cannot find that the Personnel Board was clearly wrong in concluding that a non-employee drove the parish vehicle.
Wilson argues that the record does not support the third ground for discipline, that on September 4, 1993, he failed to supervise his crew properly and allowed them to be unproductive for excessive periods of time. Testimony in support of this charge came from the investigator hired to watch Wilson. He testified that at 2:56 p.m. Wilson's crew began throwing a football to each other. They continued to throw the football for the next four minutes until their workday ended at 3:00 p.m. He also stated that at different times he saw some of the crew just sitting around. Wilson presented evidence of the fact that this was a construction crew and that at times some of the crew members were forced to wait while a prerequisite task was being completed. Further, this was still a hot period of the year in which more frequent breaks were required and authorized. Finally, it was shown that the investigator, while concluding that some crew members were wasting time, in fact had no knowledge of the tasks assigned to each member of the crew.
The appointing authority must prove by a preponderance of the evidence that the employee's conduct did in fact impair the efficiency and orderly operation of the public service. We find that the Personnel Board erred in concluding that the appointing authority met its burden of proof on this ground for Wilson's discipline.
The last issue before us is whether the Personnel Board erred in concluding that the disciplinary action taken was commensurate with the derelictions. We find no reversible error.
Wilson's primary offense is that, while intoxicated, he drove the parish vehicle, which was assigned to him to take home in case he was called out on emergencies. We view this as a very serious offense, not only because of the potential liability to which he exposed the Parish but also because of the potential harm that could have been inflicted on himself or others by this action. In fact, it is a criminal offense. Thereafter, he allowed a non-Parish employee to drive the Parish vehicle and was *1174 not forthright about these incidents when questioned. The evidence also indicates that he exhibited poor judgment by again getting behind the wheel of this vehicle in his intoxicated state once outside of the view of the police officer who had stopped him. While we are mindful that Wilson had been a Parish employee for over nine years, we do not find that the Personnel Board was manifestly erroneous in holding that termination was appropriate discipline considering the proven offenses.
Accordingly, for the reasons stated above, we affirm the judgment of the Personnel Board approving Wilson's termination of employment from the Recreation Department. Wilson is assessed costs of appeal.
AFFIRMED.
NOTES
[1] Jefferson Parish Charter, Art. 3, § 3.03B provides in pertinent part:

The parish president shall have the power to appoint and remove, subject to the provisions of this Charter, all administrative officers and employees of the Parish responsible to him; or may at his discretion, authorize the head of a department or office responsible to him to appoint and remove subordinates in such department or office subject to the provisions of this Charter.
[2] The Jefferson Parish Substance Abuse Policy provides in pertinent part:

An employee is not permitted to arrive on Parish premises or to report to work under the influence of alcohol. An employee will be considered to be "under the influence" of alcohol when the employee has used alcohol, or possessed alcohol on Parish premises, during the course of the employee's work day; or when a test indicates the employee's alcohol blood level equaled or exceeded .05 gms./oz during working time; or when the consumption of any alcohol beverage has impaired or is likely to impair the safe and efficient performance by the employee of his job duties.