liGAUDIN, Judge.
Lynn M. Abel, a Kenner police officer, was terminated by the Chief of Police on August 24, 1995. Subsequently, the Kenner Municipal Fire & Police Civil Service Board and then the 24th Judicial District Court approved the termination. Abel next appealed to this Court, contending:
(1) there was no proper pretermination notice and hearing;
(2) evidence introduced at the Civil Service Board hearing violated due process because the charge was not a stated cause in the disciplinary letter; and, further, such evidence was irrelevant and inadmissable; and
(3) the termination was neither in good faith nor for legal cause.
We find no substance in (2) and (3). There is some' merit, however, in the allegation that Abel did not receive pretermination notice and a hearing, particularly a hearing, before the termination letter dated August 24.1995 was sent by the Chief of Police, Nick A. Congemi. Nonetheless, we could find no reversible error. Accordingly, the ruling made by the Civil Service Board on January 22.1996 and the judgment of the 24th Judicial District Court dated July 31, 1997 are affirmed.
The August 24, 1995 letter of termination from Chief Congemi to Abel stated, in pertinent part:
“Based upon your own claim on inability to function and your stated unwillingness to continue to perform as a police officer, and your extensive absenteeism, the Department referred you to the Department Psychologist for a fitness for duty evaluation. The psychologist determined that you were |2not fit for duty and recommended disability retirement. Your physician corroborated this diagnosis. In accordance with La. R.S. 33:2500 B, you were afforded an opportunity to either voluntarily apply for disability retirement and/or pursue another position in the classified service of the Department, both of which you declined.
“Therefore, in accordance with La.R.S. 33:2500(1) and (13), corrective and disciplinary action for maintaining standards of service, you are hereby notified that you are removed from the departmental service, effective immediately.”
Abel argues that he was denied an actual court-like hearing before the August 24th letter was sent.
Tenured or classified civil service status is a property right and cannot be taken away without due process. See Louisiana Constitution, Art 1, Sec. 2; Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986); and Wilson v. Jefferson Parish, 668 So.2d 1167 (La.App. 5 Cir.1996).
In Wilson, this Court said:
“... due process is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
“Due process requires some kind of a hearing prior to the termination of an employee with a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Howev *453 er, the pretermination hearing does not have to be elaborate; mor does it have to definitively resolve the propriety of the discharge. Rather it should be a preliminary determination of whether there are reasonable grounds to believe that the charges against the employee are true and thereby act as a initial check against mistaken decisions.”
Before Chief Congemi sent the termination letter, he and other Kenner police officials, particularly Douglas Dodt, who is supervisor of the police department’s Internal Affairs Division, were in fairly constant and prolonged touch with Abel regarding his absenteeism and other alleged shortcomings has a police officer.
Abel’s wife died on April 19, 1995, of heart problems. Mrs. Abel had medical troubles beginning in 1988 with diabetes. She had a heart attack in 1993. Between August of 1993 and April, 1995, Mrs. Abel was in and out of the hospital 30 times for chest pains. It is apparent that Abel was under stress and he became depressed, causing him to miss many days of work. He worked, according to police department records, 170 days in 1993, 166 days in 1994 and only 79 days in eight months of 1995.
On July 6, 1995, Abel begin seeing his private physician, Dr. Alvin Rouchell, who is a psychiatrist on the Oehsner Clinic staff; and on July 26 and 28, 1995, Abel was evaluated by Dr. Gabriel Rodriguez, the police department’s psychological consultant.
Dr. Rodriguez reported:
“Officer Abel presented symptoms of severe anxiety and depression during the interview. He admits to suicidal thoughts and episodes where he thinks that he might lose his mind. He acknowledges that his patrol duties, create stress for him at the present time, and have sincé his deceased wife became ill. He claims problems with memory, concentration, and anger. He attributes his injuries, while on duty, to the change in work environment and the physical effects of his age. He tends to cry when discussing the effects of his wife’s illness and death, expressing a deep sense of guilt. He is. experiencing some conflicts with his daughter, who is also in grief. Dr. Rouchell, his attending psychiatrist, has requested sick leave so that Officer Abel can be treated for his depression.
“The intelligence testing revealed some response slowing, lack of concentration, and distractibility, but no cognitive impairment that would be cause for alarm. Officer Abel’s I.Q. falls within the average range of | intelligence. His depression and anxiety seem to be affecting his performance, which could translate to impaired performance on the street.
“The personality testing tends to corroborate Officer Abel’s presentation of a severe depression, with debilitating anxiety. He is ■very susceptible to the effects of stress and unable to cope with his duties as a patrol officer. He needs to be under the care of a psychiatrist for the foreseeable future. He may have suffered from a chronic, mild depression in the past, but he now has developed a major depression.
“In fight of the above, I would recommend that this officer not return to duty. Given his current level of psychological distress, it would present a risk to him, his fellow officers, and the public. I would be concerned about Officer Abel ever being able to handle the stress encountered by a patrol officer. He could easily be diagnosed as having a Post-traumatic. Stress Disorder. I would recommend that the Department assist him in seeking a disability pension and a change to a less stressful occupation.”
On August 11, 1995, Dr. Rouchell wrote to Dodt saying:
“Thank you for your letter of 8/4/95 and the copy of Mr. Abel’s psychological testing done by Dr. Rodriguez. I think Dr. Rodriguez has accurately portrayed Mr. Abel’s current mental status. He does indeed have a severe major depression. I agree that his IQ is higher than he tested. I do not think Mr. Abel has a substance abuse problem. He is currently on Pamelor 25 mg, two tablets at bedtime and Valium 5 mg twice a day. He takes these medications as directed.
“I concur with Dr. Rodriguez that Mr Abel is too depressed to work at present. His prognosis is guarded. I do not think he will *454 be ready to return to work for at least three to six months. There is the chance, with continued treatment, that he might be ready and able to return to work in six|6months to a year.”
On August 21, 1995, Abel requested sick leave, which was denied. He was, however, offered disability retirement or less stressful positions within the police department, such as in communication or as a jailer. Abel, who had worked as a patrol officer “in the street”, refused these offers. He called the offered positions “demotions” and said they were just as stressful for him as what he had been doing. This led directly to the termination letter.
True, Abel did not receive an actual, scheduled contradictory hearing before August 24, 1995. He did receive, however, more that sufficient pretermination notice, which is what Wilson v. Jefferson Parish, supra, and other cases require. We are unaware of any case or any 'civil service rule specifically requiring formal notice to the employee and the appointing authority and then a contradictory hearing before the employee could be terminated or disciplined for cause.
The Louisiana Constitution, Art. 10, Sec. 8, reads:
“No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission ...”
The termination letter spelled out the reasons for the disciplinary action being taken— i.e., “inability to function” and “extensive absenteeism”- and did not violate due process. The civil service board and the district court judge found that the Kenner Police Department had acted fairly and in good faith for cause under R.S. 33:2500, which state in pertinent part:
“The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may.remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
|6“UnwilIingness or failure to perform the duties of his position in a satisfactory manner ...
“The development of any defect of physical condition which precludes the employee from properly performing the duties of his position, or the development of any physical condition that may endanger the health or lives of fellow employees ...”
We cannot say that either the civil service board or the district court judge erred in finding that the Kenner Police Department did not act arbitrarily or capriciously. Further, it does not appear that the civil service board abused its discretion in permitting evidence within the issues raised by and in the termination letter. Throughout, we see no denial of due process.
AFFIRMED.