|, STEWART, Judge.
Police officer appealed the decision of Monroe Fire and Police Civil Service Board (“Board”) to uphold West Monroe Police Department’s (“WMPD”) determination to pass him over for promotion despite his status as senior ranking officer on the force. Finding that the Board’s deci *101 sion was arbitrary and capricious, we reverse.
FACTS
In June 1997, Lawrence Moore (“Moore”), a police officer with WMPD was eligible to be promoted to the rank of Sergeant. Moore, who is black, had passed the promotional test and was at the top of the promotion list. In fact, Moore had been the acting Sergeant in the department for six months because the absence of Major Bobby Avery due to a long illness caused other people to move up in rank to take Major Avery’s place. Although the state civil service Class Plan for promotion to the rank of Sergeant contained a provision for candidates to pass a health examination that demonstrated “good health and physical fitness sufficient to perform the essential duties of the position with or without accommodation,” no officer had been required to pass a fitness exam in order to be promoted since the Class Plan was adopted in 1995. Each of the officers promoted during that time period were white. Interestingly, on July 11, 1997, the chief of the WMPD, Larry LaBorde, issued a policy that no officer who had not completed or passed all aspects of the department physical fitness test would be eligible for promotion. On July 22, 1997, Major Avery left the police department after some controversy concerning his use of sick leave for the preceding months. Officer Moore was then given the fitness test as a | ¡¡part of the new regulations. However, Officer Moore, who is obese and suffers from high blood pressure, was unable to pass each aspect of the test despite several attempts. On the last of the fitness tests, Moore passed each part except the obstacle course which he failed by 42 seconds. He was subsequently passed over for sergeant, and the job was offered to two white officers lower on the seniority list than Moore. Moore then appealed to the Board for reversal of the decision to pass him over for sergeant.
On September 2, 1997, the Board held a meeting to discuss Moore’s being passed over for promotion. At that time the Board found that although Chief LaBorde contended that Moore was passed over because he indicated that he did not want the promotion, the offer was deemed to not be a “serious” offer. The Board then offered Moore the promotion according to the regulations that were in place at the time which included passing the physical fitness exam. Moore asserts that the offer of promotion was invalid because it contained the fitness test which he contended was not required for promotion, and was mere pretense for the WMPD’s true desire to pass him over for promotion because he is black. The Board elected to not address the issue of whether the fitness test was a legitimate requirement for promotion according to the Louisiana seniority promotional system. On October 14,1997, the Board again offered Moore the promotion provided he pass the physical fitness test. The Board also ordered Chief LaBorde to give written reasons for passing over Moore for promotion. Chief LaBorde cited Moore’s inability to pass the fitness exam as his reason for bypassing Moore. On October 28, 1997, Moore appealed La-Borde’s decision to the | .¡Board. Although Moore’s appeal was originally set for hearing on November 11, 1997, two Board members had resigned and the Board was unable to meet for lack of a quorum. Moore’s appeal was not heard until March 4, 1998. After an evidentiary hearing the Board asked Chief LaBorde to make another offer of promotion to Moore according to the same terms that were in effect on September 2, 1997. However, Moore again failed the fitness exam on April 2, 1998, and was denied the promotion. Moore then filed an appeal to the district *102 court. On September 3, 1998, Moore’s appeal was remanded back to the Board by the trial court because the court found that the Board had not addressed the issues raised by the appeal. Moore appealed the trial court’s decision to this court which dismissed the appeal on February 25, 1999. Next, the Louisiana Supreme Court denied Moore’s application for supervisory writs. On October 27, 1999, the Board had a hearing in accordance with the trial court ruling in favor of the appointing authority and against Officer Moore. Moore then filed a new suit in the district court which was consolidated by the trial court on November 7, 2000. Finally, on March 29, 2001 the trial court ruled in favor of the Board and Officer Moore then filed the instant appeal.

Standard of Review

A civil service board’s decision, if made in good faith and for legal cause, should not be disturbed by the district court on appeal. City of Shreveport v. Willis, 33,680 (La.App. 2nd Cir.8/25/00), 765 So.2d 1245; Shields v. City of Shreveport, 565 So.2d 473 (La.App. 2d Cir.1990), writ granted, 571 So.2d 637 (La.1990), aff'd, 579 So.2d 961 (La.1991). The | ¿district court should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Shields, supra. A decision of the Board is subject to review on any question of law or fact appealed to the court of appeal. La. Const. Art. 10, § 12. On appellate review, findings of fact of the Board are not to be overturned in the absence of manifest error, and the Board’s conclusion as to the existence or absence of cause for dismissal should not be disturbed unless the decision is capricious or an abuse of the Board’s discretion. Dumez v. Houma Municipal Fire & Police Civil Service Board, 408 So.2d 403, 406-407 (La.App. 1st Cir.1981). Nevertheless, an appellate court’s review of the Board’s decisions as to jurisdiction, procedure and interpretation of laws and regulations is not so limited. Cannon v. City of Hammond, 97-2660 (La.App. 1st Cir.12/28/98), 727 So.2d 570; Office of Youth Services v. Savoie, 569 So.2d 139, 141 (La.App. 1st Cir.1990). In this case, Moore’s first assignment of error raises questions of procedural due process, and our review is not limited by the abuse of discretion or manifest error standard. Savoie, 569 So.2d at 141.

Due Process

The Due Process Clause provides that the right to life, liberty and property cannot be deprived except pursuant to constitutionally adequate procedures. U.S. Const., Am. XIV. La. Const, art. 10, Sec 8(A). A due process claim in the context of civil service employment depends upon an employee having a property right in continued comparable employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). It is undisputed that Moore was serving with permanent status in the classified civil service, held a position with the West Monroe Police Department, and was the senior officer on the promotional list. Therefore, he possesses a property right of which he cannot be deprived without cause and procedural due process. La. Const. Art. 10, Sec. 8(A); Savoie, 569 So.2d at 141. Now, the question presented to this court is whether the West Monroe Police Department met procedural due process requirements.
The basic procedural due process requirements are notice and an opportunity to respond. Before an employee with permanent status may be discharged, he is entitled to oral or written notice of the charges against him, an explanation of his *103 employer’s evidence, and an opportunity to present his side of the story. Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. Similarly, due process requires, at a minimum, some type of a hearing before a tenured employee is deprived of his status or has that property interest impinged by a new regulation.
In determining whether a particular hearing satisfies the Loudermill requirements, we must balance the competing interests at stake, namely: “the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens [sic] and the risk of erroneous termination.” Loudermill, 470 U.S. at 543, 105 S.Ct. at 1493.
Tenured or classified civil service status is a property right and cannot be taken away without due process. See Louisiana Constitution, Art 1, Sec. 2; Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986); and Wilson v. Jefferson Parish, 668 So.2d 1167 (La.App. 5th Cir.1996). In Wilson, the court said “... due process is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).” As noted by the United States Supreme Court in Loudermill supra, “the right to due process is conferred not by legislative grace, but by constitutional guarantee.” Although a state may establish certain statutory procedural safeguards to protect property rights, still the safeguards may be judged insufficient (depending on the facts and circumstances of a particular case) to guard the particular property interest at risk. Loudermill, supra.
The Louisiana Supreme Court in Wilson v. City of New Orleans, 479 So.2d 891, 894 (La.1985) also expressed “[The] central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified.”
An equal concomitant to this right, thus, is “the right to notice and opportunity to be heard” which must be extended at a meaningful time and in a meaningful manner. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
Moore was given notice of the change in policy by the WMPD and had a hearing when the offer of promotion was made. However, we find [7that the proceedings before the Board were constitutionally infirm and did not comport with due process requirements. Specifically, the WMPD’s implementation of the physical fitness test as a requirement for promotion was blatantly arbitrary in that while it claims that such requirement was in effect since 1995, it was never used in promoting any individuals before Officer Moore. Further, the addition of the fitness test amounted to a revision of the Classification Plan which was done without approval from the Board in violation of La. R.S. 33:2493(D) which states is pertinent part:
Admission to tests shall be as follows:
D. Special requirements or qualifications for admission to tests, or for eligibility for appointment, such as age, education, physical requirements, etc., may be established by the board after consultation with the appointing authority. (Emphasis added).
*104 The WMPD’s amendment of the promotional requirements had not been adopted by the Board on July 22, 1997. The Board had indeed established a standard under which a candidate for promotion must pass a physical exam that demonstrated health and physical fitness necessary to perform the essential functions of the job; however, it is also clear that that standard had not clearly contemplated an officer being required to pass a fitness exam before being promoted. In fact, the Board still had the issue of whether or not the regulations required an officer to pass a fitness test on the agenda for meetings on September 2, 1997, and October 27, 1997. Thus, the law as it was written and enforced could not have been understood to require an officer to pass a fitness test before promotion before July 22, 1997. Consequently, the offer of promotion that was given Officer Moore | Swas invalid in that it was based on the false premise that the conditions Moore was required to fulfill for promotion were proper. It is this false assumption that caused Moore to be deprived of the property interest created by his senior status on the promotional list without due process.

Equal Protection

Assuming arguendo that the Classification Plan as it was constructed in 1995 did require a police officer to pass a fitness test before being eligible for promotion, the WMPD’s arbitrary and capricious application of the law to Officer Moore is a prima facie violation of his rights of the Equal Protection Clause of the Constitution. U.S. Amend XIV. Moore, who is black, was the first black officer to come up for promotion at the WMPD since 1995, and of all of the officers (each of them were white), to come up for promotion during that time, none of them were required to pass the physical fitness exam before being promoted. It is certainly suspicious when the appointing authority, the WMPD, decides that when a black police officer is the most eligible person to be promoted that a regulation which has allegedly been on the books for at least two years suddenly has to be enforced. When asked why no officer before Officer Moore had ever been required to pass a fitness test before being promoted since 1995, WMPD Chief LaBorde responded that “you have to start somewhere.” It is this random application of the law that this court finds most troublesome. The record is clear. Officer Moore suffers from obesity and high blood pressure. He has a history of failing all or parts of each fitness test he has been given since he was a police officer in West Monroe. It seems curious that physical [ ^fitness, the issue that has presented the greatest trouble to officer Moore during his time as an officer, would be the final stumbling block thrown in his way when he was next in line to be promoted. Interestingly enough, Officer Moore’s physical fitness was of little concern when he ably filled the position of Sergeant during Sergeant Avery’s six month absence before the position became officially open.
It may not have been clear to the Board that fitness tests were not required under the law. However, no person shall be denied the equal protection of the laws. “No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.” La. Const. Art. I, Sec. 3. What is clear is that the WMPD’s random application of this rule to the lone black officer to come up for promotion is a blatant violation of his rights under the Equal Protection Clause.
In O’Boyle v. Louisiana Tech Univ., 32,212 (La.App. 2nd Cir.10/1/99), 741 So.2d *105 1289, this court, citing the United States Supreme Court in Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), recognized the distinction between “disparate treatment” and “disparate impact” theories for claims of violation of equal protection. To wit the court stated:
We have long distinguished between disparate treatment and disparate impact theories of employment discrimination. Disparate treatment ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color religion [or other protected characteristics.] Proof of discriminatory motive | inis critical, although it can in some situations be inferred from the mere fact of differences in treatment ...
[[Image here]]
[C]laims that stress disparate impact [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate impact theory.
Hazen, supra quoting International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 335-336, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977) (citation omitted).
According to the testimony of Chief of Police LaBorde, the WMPD has not required any white officer to pass a fitness test in order to be promoted but suddenly, when the first black officer to be promoted to sergeant in several years comes up for promotion, a rule requiring officers to pass a fitness test is implemented. Moore’s obesity, high blood pressure, and failure to pass regular fitness tests provided the foothold needed for this arbitrary violation of his rights under the Equal Protection Clause. However, despite Officer Moore’s health problems, the record establishes that he competently fulfilled all of the essential duties of sergeant for six months prior to this fitness regulation being implemented.
CONCLUSION
Officer Moore was the senior officer on the promotion list for the WMPD. His status as the senior officer on the list represents a property interest of which he could not be divested without due process of law. The WMPD’s implementation of a fitness test was an arbitrary and capricious [nact which violated Officer Moore’s rights under the Due Process Clause. Moreover, even if the Class Plan allowed for the implementation of a fitness test for promotion, the WMPD’s random and discriminatory application of the rule to the first black officer to come up for promotion while withholding such a requirement from all the white officers who had previously come up for promotion, is violation of Moore’s rights under the Equal Protection Clause of the Constitution, and a naked attempt to subvert the civil service system of promotion by seniority. We reverse the trial court and order the Board to promote Officer Moore to Sergeant retroactive from July 22, 1997 with full pay and benefits. Costs of this appeal are assessed to the appellees.
REVERSED.
APPLICATION FOR REHEARING
Before, BROWN, WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing denied.
BROWN, J., would grant rehearing.