FREDERICKA HOMBERG WICKER, Judge.
 

 | aThis is a civil service disciplinary case. Albert Becker, a former employee of the Jefferson Parish Department of Parks and Recreation appeals a judgment of the Jefferson Parish Personnel Board that upheld the termination of his employment and dismissed his appeal.
 
 [1]
 
 Mr. Becker specifies four errors to the proceedings below. First, Mr. Becker contends that the appointing authority did not prove that he committed misconduct by a preponderance of the evidence. Second, Mr. Becker contends that the Personnel Board erroneously determined that he impaired the efficient operation of the Department of Parks and Recreation. Third, Mr. Becker contends that the Personnel Board erred by failing to find that his punishment was not commensurate with the offense he allegedly committed. Finally, Mr. Becker contends that the Personnel Board applied the wrong legal standard of review in affirming the decision of the Personnel Board. For the reasons that follow, we affirm the ruling of the Personnel Board.
 

 PROCEDURAL HISTORY
 

 | .jMr. Becker received a Letter of Termination from his supervisor C.J. Gibson on August 22, 2008. The Letter of Termination accused Mr. Becker of falling asleep in his parish vehicle while waiting for a fellow employee on April 7, 2008. The Letter of Termination noted that Mr. Becker had previously been suspended for sleeping his truck in 2003. The Letter of Termination concluded that Mr. Becker’s actions “more than justify [his] termination.” The Letter of Termination additionally noted that Mr. Becker had participated in pre-disciplinary hearings on July 29, 2008 and August 4, 2008.
 

 After receiving the Letter of Termination, Becker filed an Application for Review contesting his termination with the Personnel Board. The Personnel Board appointed a hearing officer to conduct the
 
 *1010
 
 hearings on the appeal. On January 27, 2009 and February 5, 2009, the hearing officer took testimony in this matter. The hearing officer thereafter dismissed Mr. Becker’s Application for Review on April 29, 2009. The hearing officer’s findings of fact indicate the following:
 

 12. On the morning of April 7, 2008, Becker remained parked for about 68 minutes in [a] parking lot at 5747 Plauche Court blocking approximately five (5) parking spaces without the knowledge, permission, or consent of the owner of the parking lot.
 

 [[Image here]]
 

 18. While he was parked in [a] parking lot without the permission or consent of the owner blocking five (5) parking spaces, Becker fell asleep in the JPDPR vehicle number 2545,
 

 [[Image here]]
 

 22. Becker did fall asleep and was visible to the public as asleep for some period of time.
 

 Mr. Becker filed this timely appeal.
 

 FACTS
 

 On April 7, 2008, Mr. Becker’s supervisor, Sam Wiley, ordered Mr. Becker to bring fellow Department of Parks and Recreation employee Maverick Charles to 14Elmwood Industrial Medicine for a visit with Dr. David Reiss. Mr. Wiley additionally ordered Mr. Becker to wait for Mr. Charles. Elmwood Industrial Medicine is located at 5800 Plauche Court, Harahan, Louisiana. Mr. Becker drove Mr. Charles to Dr. Reiss’s office in his regularly assigned parish truck. Mr. Charles and Mr. Becker arrived at Elmwood Industrial Medicine at approximately 8:30 AM.
 

 Mr. Becker parked his parish truck across the street from Elmwood Industrial Medicine at 5745 Plauche Court, Harahan, Louisiana. Mr. Becker parked the truck in several parking spots assigned to Aspen Pharmacy (“Aspen”). Aspen and Elm-wood Industrial Medicine are located across the street from each other. At the Personnel Board hearing, Mr. Becker testified that his palish truck was too wide to fit into a single parking spot in Elmwood’s lot. Thus, Mr. Becker parked the truck perpendicular to how an individual would have normally parked a vehicle. The truck blocked approximately three of Aspen’s parking spots. Mr. Charles entered Elmwood Industrial Medicine at approximately 8:43 AM. At the time, there were no other vehicles parked in the Aspen parking lot.
 

 Penney Keller, an Aspen cashier, arrived shortly thereafter. Ms. Keller noticed that a Department of Parks and Recreation truck was parked in several parking spots assigned to Aspen. She informed Omar Hamide, her supervisor and Aspen’s owner, that the truck was parked in Aspen’s lot. Mr. Hamide arrived at work minutes later. At the Personnel Board hearing, Mr. Hamide testified that he had an ongoing problem with people using his parking lot to attend Elmwood Medical Center. Mr. Hamide also testified that several large trucks had damaged his parking lot. Mr. Hamide began taking pictures of the Department of Parks and Recreation truck. Mr. Hamide also took several pictures of a man inside the truck. The pictures show a man with sunglasses on. The man’s leg is propped against the |sside of the truck and his mouth is open. The man is wearing a tag that says “Albert Becker.”
 

 Mr. Hamide testified that he thought that the man inside the truck was asleep or deceased. According to Mr. Hamide, both the driver’s side and the passenger side windows of the truck were up. Mr. Hamide testified that he attempted to awaken Becker by “banging” on the driver’s side window intermittently for ten minutes. However, Mr. Becker did not
 
 *1011
 
 respond. Mr. Hamide thereafter called the telephone number on Becker’s truck to complain about Becker sleeping on the job. Mr. Hamide was able to get in touch with Kevin O’Quinn, who arrived approximately 30 minutes after Mr. Hamide attempted to wake the man in the truck. Mr. Hamide testified that he was angry that a parish employee was sleeping on the job.
 

 At the Personnel Board hearing, Mr. Becker testified that he had parked in the Aspen parking lot many times. Mr. Becker did not dispute that he was the person depicted in the photos taken by Mr. Ham-ide. However, Mr. Becker was adamant that he was not sleeping and that he was merely reclining on the seat of his parish truck. Mr. Becker contended that he propped up his leg and foot to improve his circulation to his leg on account of his diabetes.
 

 Mr. Becker testified that after Mr. Charles entered Elmwood Industrial Medicine, he spoke to his wife on the telephone from 8:50 until 9:00. In support of this contention, Mr. Becker introduced a certified Alltel phone bill into evidence. The Alltel bill indicates that someone called Mr. Becker from his home number at 8:51 and spoke to Mr. Becker for seven minutes.
 

 Mr. Becker contended that he thereafter read the newspaper until approximately 9:25 or 9:30, at which time he spoke to his brother on the telephone. The Alltel bill indicates that Mr. Becker received a call at 9:34, which lasted for |fione minute. Mr. Becker testified that he saw Mr. Hamide taking pictures of his vehicle and the parking lot. According to Mr. Becker, he thought Mr. Hamide “was some type of architect and he was doing structural pictures of the parking lot.” Mr. Becker testified that Mr. Hamide did not approach him or his vehicle nor did he bang or tap on his window.
 

 Mr. Charles exited Elmwood Industrial Medicine at approximately 9:35 AM and rejoined Mr. Becker in the parish truck. At approximately 9:38 AM, Mr. Charles and Mr. Becker observed Kevin O’Quinn and Scott Muhoberac approaching their vehicle. Mr. Muhoberac is an area coordinator of the Parish Department of Parks and Recreation. Mr. O’Quinn was Mr. Becker’s supervisor. Mr. Muhoberac asked Mr. Becker why he was parked on the Aspen lot. Mr. Becker responded that he had just finished taking Mr. Charles to Elmwood Industrial Medicine. Mr. Mu-hoberac then asked Mr. Becker why he was still parked in the Aspen lot if Mr. Charles’s appointment was over. Mr. Becker responded “it’s break time.” Mr. Muhoberac then ordered Mr. Becker to leave the Aspen lot.
 

 Mr. Becker acknowledged that he had been disciplined for sleeping during working hours on September 5, 2003. Mr. Becker allegedly fell asleep in his parish vehicle on August 25, 2003. At the time, the Department of Parks and Recreation did not have a written rule expressly forbidding employees from sleeping in their parish-assigned vehicles during working hours. However, Mr. O’Quinn had told Mr. Becker on several occasions that sleeping in his parish truck was impermissible. Mr. Becker did not appeal the 2003 suspension.
 

 On cross-examination, Mr. Becker admitted that he stated at his pre-disciplin-aiy hearing that he “may have fallen asleep.” However, Mr. Becker maintained that he did not fall asleep on April 7, 2008. Counsel for the parish 17asked Mr. Becker about a statement executed by Michael Thomas, an assistant to Jefferson Parish Councilman Thomas Capella. In the statement, Mr. Thomas indicated that he spoke with Mr. Becker about the April 7, 2008 incident. Mr. Thomas further indi
 
 *1012
 
 cated that Mr. Becker told him that he had fallen asleep while parked in his parish truck while waiting for a co-worker who had an appointment at Elmwood Industrial Medicine. Mr. Becker denied speaking to Mr. Thomas. However, Mr. Becker admitted that his uncle may have spoken to Bob D’Hemecourt, another of Councilman Capella’s staff members. In addition, at his second pre-disciplinary hearing on August 4, 2008, Mr. Becker was asked if he disagreed with anything contained in Mr. Thomas’s statement. At that time, Mr. Becker indicated that “everything else is pretty close.” Mr. Thomas testified at the Personnel Board hearing. According to Mr. Thomas, the person he talked to unambiguously identified himself as “Albert Becker.” Mr. Thomas indicated that after his conversation with Mr. Becker, he discussed the matter with Councilman Capella.
 

 At the Personnel Board hearing, Mr. Muhoberac testified that he sent Parks and Recreation employees a letter in 2003 reminding them that they were not permitted to sleep in their vehicles. The letter was sent to Becker before he was disciplined for the 2003 incident but after the 2003 incident took place. According to Mr. Muhoberac, the rule had been in place before 2003. The letter was introduced into evidence. Mr. Muhoberac testified that as he approached Mr. Becker’s truck, Mr. Becker was awake. His leg was also propped up against the door. Mr. Mu-hoberac described Mr. Hamide as “aggravated.”
 

 Mr. O’Quinn testified that he received Ms. Keller’s call at approximately 8:30 AM the morning of April 7, 2008. Mr. O’Quinn indicated that Ms. Keller told him that a man was inside a Parks and Recreation vehicle parked in the Aspen Riot. Mr. O’Quinn testified that Ms. Keller told him that the man was sleeping inside the truck. After taking Ms. Keller’s call, Mr. O’Quinn took Mr. Hamide’s call at approximately 9:00 AM. Mr. Hamide told Mr. O’Quinn that a man in Parks and Recreation vehicle number 2545 was sleeping and that he tried to get the man’s attention by banging on the window. Mr. O’Quinn testified that he then proceeded to Aspen. When he arrived at the Aspen parking lot, Mr. O’Quinn observed Mr. Becker with his leg propped against the door of the truck. Mr. O’Quinn talked to Mr. Becker. Mr. Becker told Mr. O’Quinn that he did not fall asleep and that he was on his break. Mr. O’Quinn testified that he told Mr. Becker to leave, and Mr. Becker complied.
 

 LAW AND DISCUSSION
 

 The Jefferson Parish Department of Parks and Recreation is a classified civil service system governed by a statutory system established by Title 33, Chapter 5, Part II, of the Louisiana Revised Statutes.
 
 Bonner v. Department of Parks and Recreation,
 
 524 So.2d 255 (La.App. 5 Cir. 1988). Mr. Becker was a classified civil servant.
 

 A classified civil servant is afforded protection in disciplinary actions taken without cause. La. Const, art. 10 § 8(A);
 
 Adams v. Jefferson Parish Department of Community Action Programs,
 
 02-1090 (La.App. 5 Cir. 4/29/2003), 845 So.2d 1147;
 
 Leivis v. Jefferson Parish Dept, of Public Works,
 
 99-16 (La.App. 5 Cir. 5/19/99), 761 So.2d 558,
 
 writ denied,
 
 99-2906 (La.1/14/00), 753 So.2d 215. A dismissal of a civil servant “for cause” is synonymous with legal cause.
 
 Lewis,
 
 761 So.2d at 559. Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service.
 
 Id.
 
 Further, the appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for | cisufficient cause.
 
 Pope v. New Orleans
 
 
 *1013
 

 Police Dept.,
 
 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 5-6.
 

 The civil service provisions of the Louisiana Constitution are designed to protect public career employees from political discrimination, such that “ ‘non-policy forming public employees are selected on the basis of merit and can be discharged only for insubordination, incompetency, or improper conduct, and not for religious or political reasons.”
 
 Bannister v. Dep’t of Streets,
 
 95-404 (La.1/16/96), 666 So.2d 641, 645.
 

 In Jefferson Parish, aggrieved public employees may apply to the Personnel Board for a review of discharge or disciplinary action, at which time the appointing authority bears the burden of proving legal cause.
 
 Adams v. Jefferson Parish Department of Community Action Programs,
 
 02-1090 (La.App. 5 Cir. 4/29/03), 845 So.2d 1147. The Personnel Board can then consider only whether the action taken against the employee was made in good faith for cause. La. R.S. 33:2561;
 
 Ruddock v. Jefferson Parish Fire Civil Service Bd.,
 
 96-831 (La.App. 5 Cir. 1/28/97), 688 So.2d 112, 114-15.
 

 On appeal, this court should apply the clearly wrong or manifest error rule.
 
 Wilson v. Jefferson Parish,
 
 95-470 (La.App. 5 Cir. 1/17/96), 668 So.2d 1167,
 
 writ denied,
 
 96-0413 (La.4/19/96), 671 So.2d 927. If made in good faith and for statutory cause, a decision of the civil service board should not be disturbed on judicial review.
 
 Moore,
 
 839 So.2d at 945. Good faith does not occur if the appointing authority acts arbitrarily or capriciously, or as a result of prejudice or political expediency.
 
 Id.
 
 Arbitrary or capricious behavior means without rational basis for the action taken.
 
 Id.
 
 at 946.
 

 FIRST SPECIFICATION OF ERROR
 

 | min its first assignment of error, Mr. Becker contends that the Personnel Board erred in dismissing his appeal because the Department of Parks and Recreation failed to establish that he committed misconduct. We disagree.
 

 The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept. of Police,
 
 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The Board’s findings must be based on competent evidence.
 
 Ruddock v. Jefferson Parish Fire Civil Service Bd.,
 
 96-831 (La.App. 5 Cir. 1/28/97), 688 So.2d 112, 115. Incompetent evidence will not be considered by the appellate court on review.
 
 Id.
 

 Accordingly, in order to prevail at the hearing, the appointing authority had to establish by a preponderance of the evidence that Mr. Becker committed misconduct. The parties do not dispute that the Department of Parks and Recreation had an explicit written policy that forbade Department employees from sleeping on the job. Counsel for the Department of Parks and Recreation entered the Jefferson Parish Employee Regulations of Conduct into the record. Rule 7.03 of the Regulations of Conduct is entitled “Prohibited Conduct 6 Grounds for Disciplinary Action.” Rule 7.03 explicitly prohibits “[sleeping on the job; wasting time; conducting personal business on Parish time,” and other activities. Rule 7.02 of the Regulations of Conduct provides that “corrective disciplinary action may extend to ... 7. Termination.”
 

 We must therefore determine whether the appointing authority proved, by a preponderance of the evidence, that Mr. Becker was actually sleeping on the job. We find that the appointing authority met its
 
 *1014
 
 burden of persuasion. Mr. Hamide | ^testified that he attempted to get a response from Becker for a period of “about ten minutes” to no avail. The appointing authority submitted several photographs into evidence. The photographs show Mr. Becker reclining in his parish assigned vehicle with his mouth open and his left leg propped up against the driver’s side window. Mr. Hamide admitted that he did not see Mr. Becker’s eyes closed because Mr. Becker was wearing sunglasses. Mr. Becker testified that he never fell asleep. Mr. Becker maintained that he read the newspaper and took several telephone calls whilst waiting for Mr. Charles. Moreover, Mr. Becker was adamant that he was merely reclining on the seat of his parish truck.
 

 When the trier of fact’s determination is based on a decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 845 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently.
 
 Rando v. Anco Insulations Inc.,
 
 2008-1163 (La.5/22/09), 16 So.3d 1065, 1087 (citing
 
 Parish Nat. Bank v. Ott,
 
 02-1562 (La.2/25/03), 841 So.2d 749, 753). The Louisiana Supreme Court has announced a two-part test for the reversal of a factfin-der’s determination: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
 
 Ott,
 
 841 So.2d at 753. The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder’s conclusion was a reasonable one.
 
 Id.
 
 Moreover, the Louisiana Supreme Court has determined that deference must be paid to factual | ^conclusions in civil service cases.
 
 See, e.g., Walters v. Department of Police of the City of New Orleans,
 
 454 So.2d 106 (La. 1984).
 

 In this ease, the hearing officer explicitly determined that Mr. Becker fell asleep in his truck. The hearing officer credited Mr. Hamide’s testimony, the photographs submitted into evidence, and Mr. Thomas’s testimony rather than Mr. Becker’s testimony. This was a reasonable conclusion. Mr. Hamide testified that he attempted to get Mr. Becker’s attention for approximately ten minutes. In the photographs submitted into evidence, Mr. Becker appears to be asleep in his parish vehicle. Mr. Thomas testified that he spoke with Mr. Becker and that Mr. Becker told him that he had fallen asleep in his parish vehicle while waiting for Mr. Charles. We cannot say that the hearing officer’s determination that the appointing authority sustained its burden of proof was manifestly erroneous. Accordingly, this specification of error has no merit.
 

 SECOND SPECIFICATION OF ERROR
 

 In his second assignment of error, Mr. Becker contends that the Personnel Board erred in finding that he impaired the efficient operation of the Department of Parks and Recreation. The thrust of Mr. Becker’s argument is that Mr. Wiley told him to wait for Mr. Charles at Elm-wood Industrial Medicine. Thus, Mr. Becker contends, he was free to determine how to “wait” at his own discretion.
 

 The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct complained of impaired the efficiency and orderly operation of the public service.
 
 Neuman v. Department of Fire,
 
 425 So.2d 753, 754 (La.1983). As in
 
 *1015
 
 other civil matters, deference should be given on appellate review to the factual conclusions of the Personnel Board.
 
 Id.
 

 In
 
 St. Pe’ v. Jefferson Parish Dept, of Public Works-Drainage Pwm.p Stations,
 
 06-779 (La.App. 5 Cir. 3/13/07), 956 So.2d 623, this Court implicitly 1 i;iheld that sleeping on the job impaired the efficient operation of the Jefferson Parish Department of Public Works — Drainage Pump Stations. In
 
 St. Pe\
 
 the plaintiff was terminated from his position for sleeping on the job on multiple occasions.
 
 Id.
 
 at 624-25. The parties did not dispute that sleeping on the job impaired the efficient operation of the Jefferson Parish Department of Public Works. However, this Court upheld the plaintiffs termination.
 
 Id.
 
 at 626.
 

 Similarly, we find Mr. Becker’s sleeping on the job impaired the efficient operation of the Jefferson Parish Department of Parks and Recreation. One of the primary goals of the Department of Parks and Recreation is public availability. When an employee in that service falls asleep in his parish-assigned truck, it casts doubt upon the credibility of the service to conduct one of its principal functions. Moreover, as previously mentioned, Rule 7.03 of the Jefferson Parish Employee Regulations of Conduct explicitly forbids parish employees from sleeping on the job. Mr. Becker was a parish employee who was found to be sleeping on the job. Mr. Becker makes much of the hearing officer’s conclusion that he was not required or ordered to remain at the site of the doctor’s office or accompany his co-employee into the doctor’s office. That, however, does not mean that Mr. Becker was free to fall asleep in his parish vehicle.
 

 We find that the Department of Parks & Recreation proved by a preponderance of evidence that Mr. Becker’s actions impaired the efficient operation of the Department. Accordingly, this specification of error has no merit.
 

 THIRD SPECIFICATION OF ERROR
 

 In this specification of error, Mr. Becker contends that the Personnel Board erred in failing to find that the alleged offense he committed was not commensurate with the punishment he received.
 

 | i,tThe Personnel Board has a duty to decide, independently from the facts presented, whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction.
 
 Wilson v. Jefferson Parish,
 
 95-470 (La.App. 5 Cir. 1/17/96), 668 So.2d 1167,
 
 writ denied,
 
 96-0413 (La.4/19/96), 671 So.2d 927. In evaluating whether the Personnel Board’s determination as to whether the disciplinary action is based on legal cause and commensurate with the infraction, this Court should not modify the Board’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion.
 
 Bannister v. Department of Streets,
 
 95-0404 (La.1/16/96), 666 So.2d 641, 647.
 

 Contrary to Mr. Becker’s assertions, the Louisiana case with facts most similar to this case is
 
 St. Pe\ supra.
 
 At the time the employee was terminated, Jefferson Parish had enacted Regulations of Conduct Rule 7.03 forbidding sleeping on the job. The employee had been observed sleeping on the job on two previous occasions.
 
 Id.
 
 at 624-25. This Court upheld his termination.
 
 Id.
 
 at 626.
 

 We also note that a pattern of conduct which is detrimental to the continued efficient operation of a public office can be grounds for dismissal.
 
 Leggett v. Northwestern State College,
 
 242 La. 927, 140 So.2d 5 (1962). Moreover, several individual lesser offenses have been found to constitute legal cause for dismissal.
 
 See, e.g., Matter of Geiger,
 
 337 So.2d 549 (La. App. 2 Cir.1976) (fireman terminated for several violations of grooming regulation
 
 *1016
 
 and refusal to trim his moustache). Here, it is undisputed that Mr. Becker was suspended for three days for sleeping on the job in 2003 and that he did not appeal his suspension.
 

 After a thorough review of the record, we cannot say that the Personnel Board abused its discretion in determining that Mr. Becker’s punishment was 11scommensurate with the infraction he committed. Accordingly, this specification of error is without merit.
 

 FOURTH SPECIFICATION OF ERROR
 

 In his final specification of error, Mr. Becker contends the hearing officer committed a legal error by incorrectly stating his authority to review the punishment imposed by the Department of Parks & Recreation. The hearing officer’s conclusion states, “[t]he evidence, especially the photographs, show that Albert Becker was asleep in his truck and parked improperly. While conflicting statements show that he did not improperly supervise an employee, the penalty imposed is proper. The penalty was severe, but absence an abuse of discretion or mistake of fact, the Hearing Officer does not have the authority to modify the penalty.” Mr. Becker contends that the hearing officer’s conclusion was erroneous because a hearing officer has the authority to modify the penalty if the appointing authority cannot show legal cause for the penalty rather than if the appointing authority abused its discretion.
 

 We agree that the hearing officer misstated its authority to modify the penalty imposed by the Department of Parks & Recreation. The Personnel Board is charged with the duty of reviewing this case to determine if the appointing authority had good or legal cause for terminating Mr. Becker’s employment.
 
 See by analogy Wilson v. Jefferson Parish,
 
 95-470 (La.App. 5 Cir. 1/17/96), 668 So.2d 1167,
 
 writ denied,
 
 96-0413 (La.4/19/96), 671 So.2d 927. Moreover, the Board must reduce a penalty when there is insufficient cause for imposing a greater penalty.
 
 Pope v. New Orleans Police Dept.,
 
 04-1888 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The hearing officer erred by concluding that he could not modify the punishment imposed by the appointing authority absent an abuse of discretion.
 

 | , (¡However, when an error is detected, it must be weighed to determine whether such error is harmless or prejudicial.
 
 Short v. Gaylord Chemical Corp.,
 
 1998-0606 (La.App. 1 Cir. 4/1/99), 731 So.2d 493, 496. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731, 735. Here, the error was harmless. For the reasons described above, the appointing authority proved by a preponderance of the evidence that Mr. Becker committed misconduct and that Mr. Becker impaired the efficient operation of the Department of Parks and Recreation. Furthermore, the punishment was commensurate with the offense.
 

 In the instant case, the Department of Parks & Recreation had good cause for terminating Mr. Becker’s employment. Thus, the hearing officer’s legal error did not materially affect the outcome of these proceedings, nor did it deprive Mr. Becker of substantial rights. This specification of error is without merit.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to Mr. Becker.
 

 AFFIRMED.
 

 [1]
 

 . Albert Becker will hereafter be referred to as "Mr. Becker.” The Jefferson Parish Personnel Board will hereafter be referred to as the "Personnel Board.”